**Keyworth C. BIRCH, Jr., Appellant,**

**v.**

**Sam A. ANDERSON, Appellee.**

**No. 19323.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 8, 1965.

Decided by Judgment Entered Oct. 29, 1965.

Opinion Rendered Dec. 9, 1965.

Mr. John M. Rommel, Washington, D. C. (appointed by this court), for appellant.

Miss Carol Garfiel, Asst. U. S. Atty., for appellee. Mr. David C. Acheson, U. S. Atty., at the time the brief was filed, Messrs. Frank Q. Nebeker and Oscar Altshuler, Asst. U. S. Attys., and Mr. Patrick H. Corcoran, Asst. U. S. Atty., at the time the brief was filed, were on the brief for appellee.

Before FAHY, WRIGHT and TAMM, Circuit Judges.

FAHY, Circuit Judge:

This opinion contains a fuller statement of the reasons for our judgment of October 29, 1965, which placed in effect our decision that appellee, Superintendent of the District of Columbia Jail, could not validly retain custody of appellant under the authority claimed in this case.

On September 17, 1959, the United States District Court for the Southern District of Texas sentenced appellant to five years imprisonment for violations of the federal narcotic laws. On February 18, 1963, he was released on a mandatory good-conduct release pursuant to 18 U.S.C. § 4163.[1] On December 5, 1963, he was arrested in the District of Columbia on a charge which was dismissed for lack of evidence. On January 9, 1964, he was arrested here again, this time for violation of the uniform narcotic drug act,[2] was convicted June 5, 1964, sentenced to 360 days imprisonment, and has fully served this sentence.

On March 21, 1964, 180 days before the expiration of the maximum term of the sentence of September 17, 1959, appellant's release became unconditional pursuant to 18 U.S.C. § 4164, which reads in part as follows:

A prisoner having served his term or terms less good-time deductions shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days. * * *

On March 21, 1964, appellant accordingly was no longer "deemed as if released on parole." Nevertheless, on June 25, 1964, a parole violation warrant was issued against him by the United States Board of Parole and executed December 18, 1964.[3] The board considered that by reason of the parole violation of January 9, 1964, (and the arrest of December 5, 1963) appellant could be required to serve the full five-year term of the 1959 sentence. We conclude, however, that prior to the issuance of the warrant on June 25, 1964, the board had lost jurisdiction of appellant and accordingly his confinement by virtue of the issuance and execution of the warrant was invalid.

For a contrary position the board relies upon 18 U.S.C. § 4205 and the period set out there during which a warrant may be issued. This statute is applicable primarily to those paroled at the discretion of the board, not to those who have been mandatorily released. It reads in part as follows:

A warrant for the retaking of any United States prisoner who has violated his parole, may be issued only * * * within the maximum term

1. Section 4163 reads in part as follows:
 Discharge.
 Except as hereinafter provided a prisoner shall be released at the expiration of his term of sentence less the time deducted for good conduct. * * * (June 25, 1948, ch. 645, 62 Stat. 853; Sept. 19, 1962, Pub.L. 87–665, 76 Stat. 552.)

2. D.C.Code § 33–402(a).

3. It will be seen from the foregoing that the board, except for our conclusion that its jurisdiction had lapsed, by issuing a warrant and withholding its execution until the end of the second sentence would have caused the unexpired portion of the original five year sentence, including time deducted for good conduct, to be served consecutively to the second sentence for a separate offense, without a record of judicial action knowingly taken to cause the times served to be consecutive. We commented upon this problem in Mock v. U. S. Board of Parole, 120 U.S.App.D.C. 248, 345 F.2d 737.

or terms for which he was sentenced.

\* \* \*

 The problem is whether Section 4164, which for a period of time brings into effect, with respect to mandatory releasees, board supervision applicable to parolees (partially spelled out in Section 4205), terminates the period of such supervision with the prisoner's unconditional release 180 days before the expiration of the maximum term or terms of his sentence. We think the language, purposes and history of the relevant statutes demonstrate that it does. The time during which a warrant may issue for a parolee under Section 4205 does not by the terms of that section apply to a mandatory releasee. That section applies to mandatory releasees at all only by authority of Section 4164. The time such a releasee is "deemed as if released on parole," set forth in the latter section, defines the time the board has jurisdiction over a releasee. The time the board has jurisdiction under Section 4205 was designed to coincide with the period of board supervision of parolees. Our view is that the power of the board to issue a warrant for mandatory releasees coincides with the period of board supervision of such releasees.

 This time is independent of the control prescribed, i. e., the authority of the board to retake by a warrant. During the time a releasee is "deemed as if released on parole" he is subject to the type of control applicable to a parolee, developed in Chapter 311, 18 U.S.C., but the existence of a parolee type of control for that period by no means extends the period the board has control of a releasee beyond that specified in Section 4164.

Section 4205 is concerned primarily with discretionary parolees, while Section 4164 is concerned with a prisoner who has earned a reduction in his sentence. With this in mind we pursue a more detailed review of the history of the statutes, beginning with the enactment of the first federal parole statute in 1910. 36 Stat. 819–822; 37 Stat. 650; 18 U.S.C. §§ 714–722 (1926). It had the purpose of rehabilitating prisoners by their parole, while protecting society by careful selection of parolees and by their control and supervision during parole [4] "until the expiration of the term or terms specified in his sentence, less such good time allowance as is or may hereafter be provided for by law." A warrant for the retaking of a parolee for parole violation could be issued "at any time within the term or terms of the prisoner's sentence."

The purpose of the good conduct deductions was different. It was to promote prison discipline and "mitigate the severity of sentences." [5] This purpose ended with release of the prisoner, and his release was mandatory and unconditional.[6] In contrast, the rehabilitative purpose of parole continued to the end of the maximum term and the parolee, as we have said, could be retaken at any time within the term. 18 U.S.C. § 717 (1926). This difference between a releasee and a parolee is evidenced in the 1926 codification by separation of the provisions for release for good conduct, appearing at 18 U.S.C. §§ 710–713 (1926), and those relating to discretionary parole, appearing at 18 U.S.C. §§ 714–722 (1926).

In 1932, a change in legislative policy occurred.[7] Congress provided that a prisoner who shall have served his term less good conduct deductions and is then released should nevertheless "be treated as if released on parole, and shall be subject to all provisions of law relating to the parole of United States prisoners until the expiration of the maximum term or terms specified in his sentence.[8] The 1932 amendment was thus in itself a legislative recognition that under the 1910 statute a releasee, in contrast with a pa-

---

4. Att'y Gen. Survey of Release Procedures 29–31 (1939) herein cited as *Survey.*

5. *Survey,* 493.

6. H.R.Rep. No. 314, 82nd Cong., 1st Sess. 2 (1951).

7. 47 Stat. 381 (18 U.S.C. § 716b [1940]).

8. *Id.* The 1948 codification carries these legislative provisions for release as 18 U.S.C. § 4164. The conceptual separation of parole and mandatory release is

rolee, had not been subject to the parole laws after serving his term less deductions for good conduct. Had the 1932 provisions been retained it would seem that the board's present position would be correct. But further experience brought about another change in legislative policy.

In 1951 Congress amended 18 U.S.C. § 4164 as it now provides, set forth above. This amendment limits the jurisdiction of the board over a mandatory releasee to the maximum term or terms for which he was sentenced "less one hundred and eighty days." Thus at the beginning of the 180-day period the board's jurisdiction of a releasee terminates, as prior to 1932 it had terminated when the term of sentence had been shortened by good-conduct deductions.

 It is well to set forth at this point our court's recognition of the difference between a parolee and a releasee, stated as follows in Hyser v. Reed, 115 U.S.App.D.C. 254, 263, 318 F.2d 225, 234:

> The general category of parolees can be broken down into two distinct groups: mandatory releasees and parolees. Mandatory releasees are those prisoners who have served their sentences less a credit for good behavior, 18 U.S.C. § 4161, and for industrial or employment performance "good time," 18 U.S.C. § 4162. When a prisoner has served his sentence less his good time credit he is entitled, as a matter of right, to be released. 18 U.S.C. § 4163. This type of prisoner release is based on an arithmetical computation; there is no discretion in the Bureau of Prisons to deny release.[5] A manda-

"5. However, judgment is exercised in determining "good time" credit.

> tory releasee does not achieve absolute freedom upon release from prison. For a period of time equal

to his good time allowance less 180 days, the mandatory releasee is treated as if he were released as a parolee and is subject to supervision by the United States Parole Board. 18 U.S.C. § 4164 (1958 ed. Supp. II).

Unlike a mandatory releasee, a parolee gains his conditional freedom as the result of the exercise of discretion by the Parole Board. After a federal prisoner has served a prescribed portion of his sentence, 18 U.S.C. §§ 4202, 4208, he may apply for parole. * * * The Board may grant parole when it is of the opinion "there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws" and upon "such terms and conditions * * * as the Board shall prescribe." 18 U.S.C. § 4203. * * *

The course through Congress of the 1951 amendment to Section 4164 clearly manifests the difference between a parolee and a mandatory releasee, as this difference previously had been shown in the legislative history to which we have already referred.

*The House Report*[9] states that prior to 1932 release for good conduct was unconditional, thus shortening the term, and that the 1932 amendment providing parole supervision for good conduct releasees was to help them readjust and to encourage their good behavior. In recommending their unconditional release when only 180 days of a sentence remained the Report states:

> With only a short time remaining to be served nothing more can be done for the individual prisoner by way of rehabilitation and his return to custody for this relatively short time serves only to aggravate his resentment against society and makes it

maintained, provisions covering the latter being carried in Chapter 309 (§§ 4161–4166), and those relating to parole in Chapter 311 (§§ 4201–4210), Title 18, U.S.C. (1964).

9. H.R.Rep. No. 314, 82nd Cong., 1st Sess. (1951).

more difficult for him to adjust himself when finally released.

In discussing statistics of different parole violators the Report continues:

We have concluded that so far as rehabilitating the prisoner is concerned the trouble of supervising him and the expense of returning him to custody for such a short time is not justified.

\* \* \* \* \* \*

Besides all this, these cases take up the time of the institution staff, the Parole Board members and their staff, probation officers, United States marshals, and others concerned, who are already considerably overloaded.

It is the desire to relieve these various groups from the work involved as well as save the expenses, which actuated approval of the proposed amendment. If we could see any worth-while results in the rehabilitation of this group of prisoners, the amendment would not have been approved, but experience in the past 19 years has led us to believe that the "game is not worth the candle."

The Deputy Attorney General, in a letter supporting the amendment and incorporated in the Committee Report, states:

\* \* \*, if a releasee has violated the conditions of his release by committing another offense he can be tried for that offense; \* \* \* Accordingly, it is the view of this Department that whenever a releasee has less than 180 days of the maximum term imposed upon him re-

maining to be served, his release should be unconditional.

When the amendment reached the floor of the House the following occurred:[10]

MR. CUNNINGHAM. Let me ask the gentleman [Mr. Bryson of the Committee] this: If the prisoner has a good-conduct record then he is completely removed from the jurisdiction of the court 180 days or less sooner than he would be under present law; that is, there is no parole jurisdiction or anything. He is completely out as a free man.

MR. BRYSON. That is right.

\* \* \* \* \*

MR. CUNNINGHAM. No parole board or anybody else has anything to say about it. His sentence is automatically reduced 180 days below the sentence that the court gave provided he has a good-conduct record.

MR. BRYSON. That is true. \* \*

\* \* \* \* \* \*

MR. CUNNINGHAM. \* \* \* Under this bill if he is entitled to release under the present system of parole because of good conduct, the board of parole will have no jurisdiction over him, as I understand, providing there are 180 days or less of his sentence unexpired.

MR. BRYSON. That is right.[11]

This history shows an intent to reduce the caseload of federal probation officers for the more effective working of the system. The method adopted was to eliminate a period of time from board responsibility for a particular class of prisoner, the mandatory releasee. The Parole Board felt that it must reallocate

10. 97 Cong.Rec. 3989–3990 (1951).

11. The House Report No. 314, *supra,* which indicates that theretofore a violation during the 180 days would involve continued service under the previous statute for no more than 180 days, overlooks the fact that the violation would have had the effect, if acted on by the Board, of returning the releasee for his full sentence even though that were more than 180 days. But this possible misun-

derstanding does not affect our construction of the statute since the explicitness of the language is confirmed by the Senate Report stating that the statute was meant to include both those who at release had 180 days or less and those who had longer once they have only 180 days or less. S.Rep. No. 385, 82nd Cong., 1st Sess. 1 (1951), U.S.Code Congressional and Administrative Service 1951, p. 1544. Moreover, the other purposes of economy of manpower and finances remain.

its resources and concentrate where the most good could be done. The House Report classifies those released under Section 4163 as "the least hopeful group." It was with this in mind that they were chosen to be eliminated from the workload. To give the law now the interpretation sought by the Government would frustrate this purpose.[12]

██ With this reconstruction of the situation, appellant, after March 21, 1964, and therefore on June 25, 1964, the date of the issuance of the warrant, was no longer "deemed as if released on parole" and no longer subject to board supervision. However, a prisoner paroled as a result of the exercise of board discretion would remain subject to that discretion, that is, as here pertinent, a discretion to retake under a parole violation warrant until the end of the maximum term.

It might well be, as was said in Lavendera v. Taylor, 234 F.Supp. 703, 705 (D. Kan.), "[a] parole violator's warrant that is *issued* during the period of parole may be *executed* during the terminal 180-day period of the full sentence." [Emphasis in the original.] But that is not our case, though the warrant could have been issued prior to the beginning of the 180 days.

██ In the above conclusion we find ourselves in respectful disagreement with the views of the Ninth Circuit expressed in Schiffman v. Wilkinson, 216 F.2d 589,[13] and of the Tenth Circuit in Taylor v. Godwin, 284 F.2d 116. But we find support in the dicta of the Eighth

Circuit in Sprouse v. Settle, 274 F.2d 681. Since Taylor v. Godwin, *supra,* relies primarily upon Schiffman v. Wilkinson, *supra,* we shall limit our present comments to *Schiffman* and cases there relied upon. The court considered that Section 4164 created a minimum term sentence, with the result that a parole violation during the minimum term required the maximum term to be served. This we think is a misunderstanding of "minimum term." A minimum term is a maximum term less good conduct time. United States ex rel. Anderson v. Anderson, D.C., 8 F.Supp. 812. Therefore, by definition, a mandatory releasee under Section 4163 has already served the minimum term. The court relied upon United States ex rel. Anderson v. Anderson, *supra,* decided in 1934 under the parole statute as worded in 1910, 18 U.S.C. §§ 716, 717 (1926). In that case the court, referring to good time credit yet contingent, subject to forfeiture by misconduct on parole, said that the expiration of the sentence "could not be determined until the minimum sentence had been reached," when the board would exercise its discretion to determine whether the good time should be allowed. The parolee referred to in *Anderson* was on discretionary parole under the equivalent of present Section 4203, so that the jurisdiction of the board continued throughout the term of the sentence. The question presented was whether a determination of good conduct had been made so as to shorten the sentence to the minimum term. The court held such a determination had not been made. In

---

12. The Federal Probation Officer is overloaded with cases. At present, "[t]he goal of the Federal Probation System for what it considers an ideal workload is seventy-five units per officer." But the average for 1962 was eighty-six. Clegg, Probation and Parole: Principles and Practices 146 (1964). Thus, in giving Section 4164 the effect which we think its words indicate and that Congress intended, we alleviate a burden which was intended to be alleviated by this amendment. This interpretation will allow the more effective concentration of manpower desired.

13. The opinion in this case refers to an intent of Congress in amending Section 4164 to save the public authorities the expense of returning a prisoner to custody and his further supervision when only 180 days remained of his sentence. The opinion would appear, however, to give effect to such intent only if the violation occurred during the 180-day period. The same intent would be served more fully by requiring the warrant to be issued before the final 180 days of the sentence.

our case, the board had made the determination of good-conduct time when Birch was released under Section 4163. And under present Section 4164 when such a prisoner is within the final 180 days he is on unconditional release and his sentence is entirely terminated. The 180-day period is not subject to board discretion as to its allowance. It is deducted by statute as a matter of legislative policy. The one who previously has been "deemed as if released on parole" is unconditionally released from that status. Moreover, we are not in agreement in the case of a mandatory releasee that, as was said of a parolee in Klinkner v. Squier, 9 Cir., 144 F.2d 490, 491, and adopted in *Schiffman*, 216 F.2d at 591, "it is not the issuance of a warrant charging parole violation that tolls the expiration of a minimum sentence, but the misbehavior of the parolee, * *." The statutes do not so provide. A person may violate parole status in a variety of ways, some far more serious than others. A violation may be overlooked by the board. In any event the board, though it has jurisdiction of the person of a releasee when a violation occurs, must exercise its jurisdiction at a time when it still retains jurisdiction of the person.[14] This it does not have in the case of a mandatory releasee who enters the final 180 days of his original sentence without the board having acted.

In Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399, decided some years prior to the 1951 amendment of Section 4164, no issue was raised as to the timeliness of the issuance of the warrants. The question decided by the Court was whether service of sentences imposed for second offenses which constituted parole violations constituted concurrent service of the unexpired portions of the original sentences. The Court held that the imprisonment for the second offenses was attributable to those offenses only. The Court said that the

parole violations by the prisoners was conduct "for which they were arrested, convicted, sentenced and imprisoned," causing interruption and suspension of service of the original sentence. It appears that the full terms of the original sentences had not been completed, so that the authority of the board over respondents continued to the time the violator warrants were executed and parole revoked.

Appellant has served the sentence imposed after his conviction on June 5, 1964 of the offense committed January 9, 1964. For the reasons we have stated he has in our opinion also served all the time required by reason of the sentence of September 17, 1959. Accordingly he is entitled to his liberty from the detention involved in this case.

---

14. Anderson v. Corall, 263 U.S. 193, 44 S. Ct. 43, 68 L.Ed. 247, is not in point here. The case questioned the validity of the execution of a warrant and the revoca-

tion under the warrant where the warrant itself was timely issued and was issued for a parolee.