**Robert W. BAKER, Appellant,**

v.

**Thomas R. SARD and Donald J. Sheehy.**

**Robert W. BAKER, Appellant,**

v.

**Thomas R. SARD, Chairman, Board of Parole, et al.**

**Nos. 22757, 22758.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 12, 1970.

Decided Feb. 16, 1972.

Suggestion for Rehearing En Banc Granted April 14, 1972.

Argued on Rehearing En Banc May 31, 1972.

Order Granting Suggestion for Rehearing En Banc Vacated Oct. 12, 1972.

On Panel Rehearing Decided Aug. 27, 1973 and Judgment of Feb. 16, 1972 Vacated.

W. Carter Bowles, Jr., Washington, D. C. (appointed by this court), for appellant.

Richard W. Perkins, Atty., Dept. of Justice, of the bar of the Supreme Court of Connecticut, pro hac vice, by special leave of court, with whom Thomas A. Flannery, U. S. Atty.

at the time the briefs were filed, and John A. Terry and Nathan Dodell, Asst. U. S. Attys., were on the brief, for appellees.

Before FAHY, Senior Circuit Judge, and WRIGHT and ROBINSON, Circuit Judges.

PER CURIAM:

These parole revocation cases are back on appeal after remand to the District Court for the taking of evidence and the making of factual findings as to certain issues on appeal. The findings [1] of the District Court are not clearly erroneous and they dispose of most of the issues here. This opinion will therefore be limited to a consideration of these remaining issues: whether execution of the parole violator warrant was invalid as a matter of law, and whether the Board's failure to appoint counsel to represent appellant at the revocation hearing violated due process.

■ On October 28, 1955 appellant was sentenced to serve four to 13 years for housebreaking and larceny. On April 14, 1964, he was conditionally released from Lorton Reformatory pursuant to 18 U.S.C. § 4164 (1970), and the same day took a bus for California without reporting to the parole office in Washington, D. C. as he was required to do under the conditions of his release. On April 24, 1964 a warrant issued declaring him in violation of his conditional release. Despite efforts to locate and arrest him, appellant was not taken into custody under the warrant until May 7, 1968 [2] in Redlands, California, one week after the 180-day terminal period provided in 18 U.S.C. § 4164 [3] had begun to run.

■ Relying on Birch v. Anderson, 123 U.S.App.D.C. 153, 358 F.2d 520 (1964), appellant contends that once the 180-day terminal period of his sentence began to run his freedom was unconditional, that he was no longer subject to the jurisdiction of the Board of Parole, and that consequently execution of the parole violator warrant one week after that time was invalid. In *Birch* the parole violation warrant was issued and executed during the 180-day period. Under those circumstances we did hold that the warrant was invalid, the Parole Board having lost jurisdiction over Birch at the beginning of the 180 days. *Birch* went on, however, to say:

"It might well be, as was said in Lavendera v. Taylor, 234 F.Supp. 703, 705 (D.Kan.), '[a] parole violator's warrant that is *issued* during the period of parole may be *executed* during the terminal 180-day period of the full sentence.' [Emphasis in the original.] But that is not our case, though the warrant could have been issued prior to the beginning of the 180 days."

123 U.S.App.D.C. at 159, 358 F.2d at 526. In the present case the warrant was issued long before the 180-day period began to run and, absent an unreasonable delay in execution of the warrant, jurisdiction of the Board is continued at least during that period. *See* Tirado v. Blackwell, 5 Cir., 379 F.2d 619 (1967), cert. denied, 390 U.S. 992, 88 S. Ct. 1186, 19 L.Ed.2d 1301 (1968); Taylor v. Godwin, 10 Cir., 284 F.2d 116 (1960), cert. denied, 365 U.S. 850, 81 S. Ct. 814, 5 L.Ed.2d 814 (1961); Schiffman v. Wilkinson, 9 Cir., 216 F.2d 589 (1954), cert. denied, 348 U.S. 916, 75 S. Ct. 299, 99 L.Ed. 719 (1955).

1. The order remanding and the District Court's findings of fact and conclusions of law are Appendices A and B of this opinion.

2. Baker was again released on mandatory release on or about November 4, 1971, to remain under supervision until May 22, 1972. Since the fact of revocation of his release remains a matter of public record and since he is still subject to supervision, this case is not moot. *See* Hewett v. State

of North Carolina, 4 Cir., 415 F.2d 1316 (1969).

3. 18 U.S.C. § 4164 reads in pertinent part:
"A prisoner having served his term or terms less good-time deductions shall, upon release, be deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days."

The District Court found the Board's action here in locating appellant and executing the warrant reasonable, and we find no basis for disagreement. The delay in executing the warrant was not the fault of the Board. The facts as found show that appellant left this jurisdiction on the day of his release and, despite the customary steps taken to locate and arrest a fugitive, the warrant, although issued immediately, was not executed for over four years. Under the circumstances the running of the 180 days in no way affected the jurisdiction of the Board. *Compare* Castillo v. United States, 2 Cir., 391 F.2d 710 (1968).

Appellant also claims he was denied his constitutional right to counsel at the parole revocation hearing. This court, sitting *en banc* in Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F.2d 225, cert. denied, 375 U.S. 957, 84 S.Ct. 446, 11 L.Ed.2d 315 (1963), held that an indigent had no enforceable right, constitutional or otherwise, to have counsel appointed to represent him at such a proceeding Since *Hyser* the Supreme Court, in Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), has held that appointed counsel for an indigent is required at probation revocation proceedings, and the Second and Tenth Circuits have held that due process considerations require application of the rule

of *Mempa* to parole revocation hearings as well. *See* United States ex rel. Bey v. Connecticut State Board of Parole, 2 Cir., 443 F.2d 1079, cert. granted, judgment vacated, and case ordered dismissed as moot, 404 U.S. 879, 92 S.Ct. 196, 30 L.Ed.2d 159 (1971); Earnest v. Willingham, ⁻ 10 Cir., 406 F.2d 681 (1969). Thus it appears that the rule of *Hyser* may be significantly eroded.

The judges of this panel, two of whom participated in *Hyser*, are of the view that *Hyser*, insofar as it denies counsel to indigents at parole revocation hearings, is no longer in the mainstream of the judicial development of prisoners' rights and should be reconsidered by this court sitting *en banc*.[4] Pending such reconsideration, we are constrained to apply its principles to this case.[5]

Affirmed.

## APPENDIX A

### ORDER

These causes came on to be heard on the records on appeal from the United States District Court for the District of Columbia, and were argued by counsel. On consideration thereof, it is

Ordered by the court that the records on appeal herein be remanded to the Dis-

---

4. Although we agree that the findings of the District Court here are not clearly erroneous, without doubt a lawyer would have been helpful to appellant in his attempt to show that he was prejudiced by the 85-day delay between his arrest on the warrant and his revocation hearing. *See* Shelton v. United States Board of Parole, 128 U.S.App.D.C. 311, 318, 388 F.2d 567, 574 (1967). A lawyer also might well have persuaded the Board that an alternative less severe than revocation of parole was indicated in appellant's case. In Mempa v. Rhay, 389 U.S. 128, 135, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967), the Supreme Court required appointment of counsel for an indigent facing probation revocation at the state level, stating: "[T]he necessity for the aid of counsel in marshaling the facts, introducing evidence of mitigating circumstances and in general aiding and assisting the defendant to present his case as to sen-

tence is apparent." We believe the same observation can be made with equal application to federal parole revocation proceedings.

5. Appellant claims his efforts to obtain counsel for himself were obstructed by the prison authorities. Although the findings of the District Court on this issue are not clearly erroneous, it appears that appellant was disciplined for writing a letter to a lawyer seeking his assistance at the revocation hearing. Apparently the fact that appellant's letter was on legal size paper and in excess of two pages violated a prison regulation. Apart from facility in censoring, there appears to be no rational basis for such a regulation. And censoring a prisoner's communications with his counsel obviously raises the most serious kind of constitutional problems.

trict Court for a hearing, including the taking of evidence, to determine:

1. Whether the four-year delay in executing the parole violator warrant was reasonable. In this connection, evidence concerning the steps taken by the United States in any attempt to execute the warrant should be received.

2. What conditions of release Baker was specifically informed of at the time of his release in April 1964.

3. Whether Baker's efforts to obtain counsel in connection with the hearing before the Board of Parole were obstructed by the prison authorities.

4. (a) Whether the Board of Parole considered the possibility of modifying the terms and conditions of Baker's parole, as provided in 24 D.C.Code § 206 (1967), instead of the action it did take in terminating his parole and reinstituting the remainder of his original sentence.

(b) If the Board did consider such alternatives, what the reasons were for its decision to reject them.

The Clerk of the District Court, following completion of the aforesaid remand proceedings, is directed to return to this court the records supplemented by the proceedings had on remand.

Per Curiam.

Dated: January 23, 1970

APPENDIX B

United States District Court for the District of Columbia

Robert Baker, Petitioner      Civil Action
      v.                   No. 2582–68
Thomas R. Sard and Donald
J. Sheehy, Respondents
Robert W. Baker, Petitioner    Civil Action
      v.                   No. 2520–68
Thomas R. Sard, Chairman, Board
of Parole, et al., Respondents

---

1. References to exhibits, unless otherwise described, are to defendants' exhibits.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

These matters came before the Court pursuant to the Order of the United States Court of Appeals for the District of Columbia Circuit, filed January 23, 1970, in Nos. 22,757 and 22,758. This Court has held a hearing, on August 27, 1971, including the taking of evidence, at which plaintiff was present and was represented by counsel. The Court finds the facts and makes its conclusions of law, as follows:

### Findings of Fact

1. Plaintiff was sentenced by this Court, on October 28, 1955 to a term of four to thirteen years for housebreaking and larceny. On April 14, 1964, plaintiff was conditionally released from Lorton Reformatory, to remain under the supervision of the District of Columbia Board of Parole until April 30, 1968. Exhibit 3.[1]

"What conditions of release was Baker specifically informed of at the time of his release in April 1964?" [2]

2. On March 4, 1964, T. M. Webb, institutional parole officer at Lorton met with plaintiff to discuss plaintiff's April 1964 good time release plans. Webb reported that plaintiff was hostile to the good time release laws and contended that they are illegal. Webb further reported that he informed plaintiff that, if plaintiff left Lorton in April 1964, he would be accountable to the Parole Board, whether plaintiff cooperated or not. Exhibit 1.

3. On April 6, 1964, plaintiff was given his final instructions by Webb. Webb reported that plaintiff said he had read every law regarding Conditional Release, and that the Board had no authority over him. Webb asked plaintiff whether he had been told to report to the Washington Parole Office on the morning of his release. Plaintiff re-

---

2. Item 2 of the Court of Appeals' Order of January 23, 1970. Item 2 is dealt with first so that these findings will be in approximate chronological order.

plied that he had been told, but was not saying he was going to report. Plaintiff stated that he was going to see a lawyer, and get an injunction against the Board. Exhibit 2.

4. The conditions of good time release were read and explained to plaintiff on April 6, 1964. They included the conditions:

1. That I will report *immediately* upon my release to the Washington Office of the Board of Parole, East Administration Building, 300 Indiana, N. W. for my instructions. [Emphasis in original]

2. That I will not go outside the limits fixed in this Certificate without first obtaining the approval of the Board of Parole through the Parole Officer in charge of my case.

3. That I will, between the first and sixth days of each succeeding month, until my final release, make a full and truthful written report to the Board of Parole, East Administration Building, 300 Indiana Avenue, N. W., Washington 1, D. C., upon the form provided for that purpose, and that I will submit each such report to my Parole Officer for certification.

.    .    .    .    .    .

14. I understand that my limits of Good-Time Release have been designated by the Board as * District of Columbia. Exhibit 3.

5. Plaintiff testified that he never met with T. M. Webb concerning the conditions of release (Tr. 29); that he did not meet with anyone on the institutional parole staff before he was released (Tr. 29); that he was never told to report (Tr. 43); that the only interview he had before he was released was with Stanley Knupp, who was then Assistant Superintendent for Training and Treatment (Tr. 29–30); and that the only condition of release Knupp stated was that if plaintiff committed a crime he would be brought back. Plaintiff's testimony is contradicted by the contemporaneous memoranda (Exhibits 1–3, see exhibit 4). Knupp testified that he nev-

er spoke to any inmate regarding his conditional release—it was not his job (Tr. 64); that he never told plaintiff that if he commits any felony he would be brought back (Tr. 64); that T. M. Webb was one of the institutional parole officers whose duties included briefing men when they became eligible for conditional release (Tr. 63). In an affidavit filed in this Court dated December 16, 1968 plaintiff stated that he was called up to the Institutional Parole Staff. Tr. 30. The Court finds the facts as stated in paragraphs 2, 3 and 4 above, and credits the testimony of Knupp. The Court does not credit the testimony of plaintiff.

"Whether the four-year delay in executing the parole violator warrant was reasonable. In this connection, evidence concerning the steps taken by the United States in any attempt to execute the warrant should be received."

6. On April 20, 1964, Parole Officer Alfred G. Zimmerman requested that the Parole Board issue a warrant, which was issued on April 24, 1964. Exhibits 4 and 5.

7. By memorandum of April 27, 1964, the Supervisor Parole Unit transmitted to the Superintendent, D. C. Jail the folder and copies of the warrant pertaining to plaintiff. Exhibit 6. The memorandum reported that plaintiff's whereabouts were unknown; and that his sister, Mrs. Regenia Lambert, lived at 220 Potomac Street, Cumberland, Maryland. By memorandum of the same date, the Chief of Detectives, District of Columbia Police Department, was advised that plaintiff was an absconder for whom a warrant was outstanding. Exhibit 7. On April 29, 1964, the Superintendent of the D. C. Jail sent copies of the warrant to the United States Marshal for the District of Maryland. Exhibit 8. Also on that date the Federal Bureau of Investigation was asked to help locate plaintiff. Exhibit 9.

8. In 1964, where the only address given in connection with a warrant was

that of relatives of the person sought in a place as distant from Baltimore as Cumberland, Maryland, normal procedure of the U. S. Marshal's office in Baltimore was to telephone local authorities in the distant place on receipt of the warrant. Two deputies would have to be sent to apprehend the person, and since a round trip to Cumberland is approximately 300 miles, inquiry would first be made whether the person wanted was there, before the deputies would make the trip. Negative responses to such telephone inquiries were not routinely entered on the records of the Marshal's office. Accordingly, although there is no way to verify the fact at this time, it is reasonable to believe that inquiry by the Marshal's office was made concerning plaintiff of local authorities in Cumberland, Maryland shortly after receipt of the warrant in May of 1964. (Stipulation of Counsel that Deputy Marshal Gordon B. Mitchell would so testify.)

9. In addition, the records of the U. S. Marshal's office in Baltimore contain the following entry:

2–28–66 Checked only address available—negative, notified local authorities, via Cumberland City Police Dept., Detective Bureau (Capt. Van). Stated they would keep on alert for subject. He is known to them. More info to follow via Mail from Capt. Van. (Scheldt). Exhibit 29.

10. A wanted flash notice for plaintiff, submitted by the District of Columbia Jail, was placed in the files of the Federal Bureau of Investigation on April 29, 1964. It is customary for the Bureau's identification personnel to notify the department that submitted a wanted flash notice when prints were received from any other agency on that person. (Stipulation of Counsel that a representative of the Federal Bureau of Investigation would so testify.)

11. On June 13, 1967, the Federal Bureau of Investigation reaffirmed that plaintiff was still being sought as a violator by the District of Columbia local authorities. (Stipulation of Counsel that a representative of the Federal Bureau of Investigation would so testify.)

12. On April 11, 1968, by telephone the Federal Bureau of Investigation advised local authorities in the District of Columbia that plaintiff was reported as having been arrested by Redlands, California police as of April 3, 1968. (Stipulation of Counsel that a representative of the Federal Bureau of Investigation would so testify.) The United States Marshal, District of Columbia, advised the United States Marshal, Central District of California, to lodge a detainer against plaintiff, based on the Board's violator warrant. On April 11, 1968, this request was confirmed by letter which transmitted the Board's warrant. Exhibit 10. The letter requested that, "when custody is assumed by your office [i. e., the Marshal for the Central District of California], make the necessary arrangements to return [plaintiff] to the District of Columbia. . . ." On May 7, 1968 the United States Marshal for the Central District of California took plaintiff into custody on the Board's violator warrant. Exhibit 5.

13. On the date of plaintiff's good-time release, April 14, 1964, he was taken by bus from Lorton to the District of Columbia. He hailed a taxicab, and went to the Greyhound Bus Station. There he boarded a bus to Southern Virginia and then on to Cincinnati and St. Louis and the West Coast. He did not return to this area, nor did he come back across the Mississippi River until he was arrested in 1968. Tr. 52–53, 15.

"Whether Baker's efforts to obtain counsel in connection with the hearing before the Board of Parole were obstructed by the prison authorities"

14. During and after August 1968 plaintiff wrote several letters to Phillip Hirshkop, Esq. to discuss representation before the Board of Parole. Tr. 60.

15. Except in one instance, plaintiff had no problem with regard to communicating with Mr. Hirshkop, and he did in fact communicate with Mr. Hirsh-

kop. Tr. 60. Nor did plaintiff have any problem with regard to communicating with present counsel, W. Carter Bowles, Jr., Esq. Tr. 60.

16. One letter to Mr. Hirshkop was returned "addressee unknown". This letter consisted of four handwritten legal size pages. Plaintiff's exhibit 1, Tr. 18.

17. Subsequent to the return of this letter, plaintiff received a notice that the letter was violative of the prison regulations, in effect in 1968, which, *inter alia*, prohibited correspondence on legal paper and correspondence in excess of two pages. Tr. 19, 59.

18. At all times, plaintiff had available for his inspection copies of all relevant prison rules and regulations; in fact, plaintiff's duties as a "houseman" required him to distribute rules and regulations to other inmates. Tr. 57–58.

19. Plaintiff never discussed his alleged violation with any institutional personnel. Tr. 59–60.

20. In his twelve years residency at Lorton, plaintiff has never been reprimanded or disciplined for any matter so serious that a notation thereof was placed in his records. Tr. 70.

21. Plaintiff appeared before the Board of Parole on July 31, 1968, at which time his case was continued to permit plaintiff to seek to obtain counsel. Exhibit 11. The Parole Board provided plaintiff with a list of agencies which might be able to assist him. Exhibit 11, Tr. 17. Plaintiff again appeared before the Board on November 7, 1968, and the case was again continued, plaintiff not having obtained counsel.

"(a) Whether the Board of Parole considered the possibility of modifying the terms and conditions of Baker's parole, as provided in 24 D.C.Code § 206 (1967), instead of the action it did take in terminating his parole and reinstituting the remainder of his original sentence. (b) If the Board did consider such alternatives, what the reasons were for its decision to reject them."

22. At the revocation hearing on December 12, 1968, plaintiff made no contribution on the facts of the case, nor any request regarding the action the Board might take if it found violation. He referred to his case in Court. Reverend Ferrell stated:

. . . . If I understand what you mean when you say you are not prepared to make any responses, this then leaves the Board to determine on the basis of what information we have before us, records supplied to us whether or not you are in violation of your mandatory release and whether or not you should be declared a violator. Exhibit 14.

23. The "Summary Transcript" by the Board states:

The Board finds that the subject is in violation of his mandatory release, that the subject did intend so to be, and therefore finds the subject to be a violator of mandatory release and orders his mandatory release revoked. Exhibit 14.

24. The Board of Parole did consider other alternatives before it took its action revoking plaintiff's mandatory release. The other alternatives considered were: (1) reinstating plaintiff to mandatory release and thus closing the case out as of April 30, 1968; (2) Revoking mandatory release and reparoling plaintiff immediately to an acceptable plan; (3) Revoking mandatory release and reparoling plaintiff after a period of from three to six months through the Work Release Program; (4) Further continuing the case without decision to afford plaintiff another opportunity to secure counsel. Exhibit 28.

25. The Board did not exercise these options for the following reasons.

1. [Reinstatement to mandatory release]. Mr. Baker had been sentenced to a term of 4–13 years. Statutory provisions provide that upon (his mandatory) release he would remain under supervision for the balance of the unserved portion of the 13 years minus 180 days. Mr. Baker indicated

prior to his mandatory release that he would not comply with that statute. To have exercised this option would have rewarded Mr. Baker for a willful violation of the law. Additionally, Mr. Baker was unwilling to advise the Board of any reason why it should exercise this option and refused to participate in the hearing intended to reach an equitable decision in his case. Mr. Baker had been advised at the time of his mandatory release of his responsibilities to be placed under supervision for the balance of the unexpired term. He had indicated at that time the Board was without authority to place him under supervision and that he would not report for nor respond to supervision.

2. [Revocation and immediate reparole]. Mr. Baker had previously indicated his rejection of the Board's authority and had absconded from supervision. There was nothing gleaned from Mr. Baker's appearance before the Board to indicate that if it revoked and reparoled him he would respond affirmatively to supervision.

3. [Revocation and reparole through Work Release]. As stated in #2 above, there was nothing presented to the Board to indicate that Mr. Baker would not abscond from work release or supervision a second time.

4. [A further continuance to afford plaintiff another opportunity to secure counsel.] Over a period of months, in spite of his having been advised that the Board was without authority or means to appoint counsel for him and in spite of the fact that the Board had advised Mr. Baker of agencies to which he might turn in an effort to secure counsel, Mr. Baker gave no indication that a further continuance of the case would result in his securing counsel. Also, upon advice of counsel (the Office of the U.S. Attorney), the Board believed that, in light of the period of time that had elapsed without Mr. Baker having obtained an attorney, an additional delay in holding a revocation hearing might be considered a violation of proper procedures. Exhibit 28.

### Conclusions of Law

1. The four-year period that elapsed between the issuance and execution of the parole violator warrant was reasonable, particularly in light of the facts that (a) the D.C. Board of Parole, through the Superintendent of the District of Columbia Jail, communicated the fact of plaintiff's absconder status to the appropriate authorities, including the Federal Bureau of Investigation; (b) the authorities had no address for plaintiff, and did attempt to locate plaintiff through the address of plaintiff's sister; (c) plaintiff left this area on the day of his release from Lorton, went to the West Coast, and did not return until brought back after his arrest; and (d) the warrant was executed shortly after plaintiff's arrest in California on another charge. *Cf.* Molinaro v. New Jersey, 396 U.S. 365, 90 S.Ct. 498, 24 L. Ed.2d 586 (1970); Dawkins v. Mitchell, 141 U.S.App.D.C. 213, 437 F.2d 646 (1970).

2. The Court's findings, see paragraphs 2–5, state the conditions of release which plaintiff was specifically informed of prior to his release in April 1964.

3. Plaintiff's efforts to obtain counsel in connection with the hearing before the Board of Parole were not thwarted or obstructed in any way.

4. In terms, the Court of Appeals' Order does not direct this Court to do other than make findings on its fourth issue, regarding the alternatives to revocation considered by the Board and its reasons for rejecting them. The Court has made such findings. However, it may be implicit in the Court of Appeals' Order that this Court draw a conclusion from those findings. Accordingly, the Court concludes that there was a rational basis for the decision of the Parole Board to revoke plaintiff's conditional

release, rather than to adopt one of the other options.

Dated: October 20, 1971

HOWARD F. CORCORAN
United States District Judge

Before BAZELON, Chief Judge, and WRIGHT, McGOWAN, TAMM, LEVENTHAL, ROBINSON, MacKINNON, ROBB and WILKEY, Circuit Judges.

## ON SUGGESTION FOR REHEARING EN BANC

PER CURIAM.

On consideration of appellant's suggestion for rehearing *en banc* and expedited consideration, it is

Ordered by the Court *en banc* that the aforesaid suggestion is granted and the above cases shall be reheard by the Court sitting *en banc*.

The Clerk of the District Court is directed to return the opinion and certified copy of this Court's judgment as promptly as the business of his office permits.

## OPINION ON REHEARING

Before FAHY, Senior Circuit Judge, and WRIGHT and ROBINSON, Circuit Judges.

FAHY, Senior Circuit Judge:·

The several questions raised by appellant in his long effort to have the courts set aside the revocation of his parole, were decided against him in Baker v. Sard and Sheehy, 158 U.S.App.D.C. ——, 486 F.2d 415 (1972), but our decision was on the assumption that we were bound, on the question of appellant's right to appointed counsel at the revocation hearing, by Hyser v. Reed, 115 U. S.App.D.C. 254, 318 F.2d 225 (en banc), cert. denied, sub nom. Jamison v. Chappell, 375 U.S. 957, 84 S.Ct. 447, 11 L. Ed.2d 316 (1963). We expressed the view that intervening decisions of the Supreme Court cast doubt upon the correctness of *Hyser* on the counsel question, whereupon, on application to that end, our court decided to reconsider the matter en banc. Pending reconsideration the Supreme Court granted certiorari in Gagnon v. Scarpelli, 408 U.S. 921, 92 S.Ct. 2490, 33 L.Ed.2d 331 (1972), involving the right of an indigent to appointed counsel at a hearing on the revocation of probation. In view of this development the en banc order was vacated and the case was left with this division of the court to await the outcome of *Scarpelli*, our jurisdiction being maintained by withholding the mandate in *Baker*. Following the decision of the Supreme Court in *Scarpelli*, 1973, 411 U.S. 778, 93 S.Ct. 1756, 36 L. Ed.2d 656 counsel for the appellee Board of Parole, and for appellant, in response to our request have submitted memoranda to assist us in disposing of the case.

### I.

In *Scarpelli* the Court held that the Sixth Amendment right to the assistance of counsel did not attach to a hearing on revocation of probation or parole, but that since a deprivation of liberty might result due process of law would require in some instances that the Board of Parole appoint counsel to represent an indigent at the hearing. The Court relied heavily upon its recent decision in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), also decided subsequent to *Baker*, in which several characteristics of parole revocation proceedings were considered, although the problem of an indigent's right to appointed counsel was not then before the Court for decision. In *Scarpelli* the Court held that no distinction was to be drawn with respect to the counsel issue between revocation of probation and parole. The right of an indigent to appointed counsel at the hearing, the Court held, is not absolute, but is to be decided in terms of due process of law on a case-by-case basis. The decision in the first instance is to be by the body to conduct the hearing, aided by certain non-exclusive guidelines which the Court set forth.

Baker was conditionally released from Lorton Reformatory April 14, 1964. Ten days later a warrant issued declaring him in violation of his conditional release. He was taken in custody on this warrant May 7, 1968, and six months later, December 12, 1968, the appellee Board held a revocation hearing. His request for appointed counsel was denied by the Board,[1] which revoked his parole. During the ensuing litigation challenging this action Baker completed service of the unexpired term of his original sentence.[2]

## II.

Neither the Board nor Baker suggests that it is feasible to require the Board to determine now under the standards of *Scarpelli* whether or not Baker was entitled to counsel at the hearing of December 12, 1968. In this connection the Board points out that the record, including the findings of the District Court left undisturbed by this court in *Baker, supra*, should lead the court now to hold that Baker was not entitled to appointed counsel and, since in any event he is no longer in custody, no practical relief is available to him. Baker contends that we should hold on the basis of the same record that under *Scarpelli* he was entitled to counsel. He further contends that, having been denied due process of law by being deprived of his liberty without such required assistance, the revocation of his parole should be set aside. This relief he emphasizes is feasible, for he is presently deprived, due to the revocation, of his voting rights in

this jurisdiction of his residence. 1 D. C.Code § 1102(7)(A) (Supp. V, 1972).[3]

## III.

There is no clear solution to a case in this posture. A certain weakness in the Board's position, however, indirectly strengthens that of Baker. The weakness is that it cannot be said with confidence that if Baker had been represented by counsel at the hearing the Board's finding that he had violated his parole would have been made, or, if made, that the Board would not have been persuaded to restore him again to the liberty of parole, pursuant to the broad discretionary powers available to the Board. 24 D.C.Code § 206 (1967). Neither of these possibilities is obviated by the subsequent proceedings in the District Court considered in our *Baker* decision, for we there have held open until now the counsel question, including what effect our decision in that regard might have upon all that has gone before in the absence of counsel. In its careful analysis of the vital part of the parole system in the administration of justice, in the interests of both the individual directly affected and the community where the Board seeks a place for the offender, free of his past anti-social conduct, the Supreme Court encourages Board action other than revocation. The Court states,

> "Revocation . . . is, if anything, commonly treated as a failure of supervision. While presumably it would be inappropriate for a field agent *never* to revoke, the whole thrust of the

1. The Board of Parole prior to its final refusal to appoint counsel had provided Baker with a list of agencies that might have assisted him in obtaining counsel. Baker was unable, however, to obtain counsel to represent him, notwithstanding the more than four month continuance the Board allowed for this purpose.

2. That this did not render the case moot is clear from Gagnon v. Scarpelli, *supra*, 411 U.S. at 780, 93 S.Ct. 1756.

3. We note that in *Scarpelli* the Court, relying on *Morrissey*, as well as elaborating upon the

place parole occupies in our system of justice, requires both a preliminary and a final hearing in connection with the revocation of either probation or parole. 411 U.S. at 781–782, 93 S.Ct. 1756. The preliminary hearing is concerned with whether or not there is any need to go forward with possible revocation after an alleged violation. No preliminary hearing at all was afforded Baker, but we have no need to inquire into the effect of its absence, for we dispose of his case on the basis of the absence of counsel at the final hearing in the revocation proceeding.

probation-parole movement is to keep men in the community, working with adjustment problems there, and using revocation only as a last resort when treatment has failed or is about to fail."[9]

[9]. Remington, Newman, Kimball, Melli & Goldstein, [Criminal Justice Administration, Materials and Cases] . . . at 910 [(1969)].

Gagnon v. Scarpelli, *supra*, 411 U.S. at 785, 93 S.Ct. at 1761.

Baker's situation falls well within this approach. The violation of parole charged to him was not conduct affecting another person or property. It was that when paroled in April, 1964, he left this jurisdiction without reporting to the office of the Board for instructions and without Board approval. He remained at liberty four years, until April, 1968, when he was arrested in California. He had a job there, and had acquired no criminal record in the intervening years. Insofar as appears, he had made community adjustment. Moreover, his parole in April, 1964, was mandatory because during his prison service for nine years under his maximum 13-year sentence he had merited "good time" deductions from the term of his sentence. With counsel at the revocation hearing Baker might well have escaped further loss of liberty. He might well have been restored to parole on such conditions as the Board might have formulated with the assistance of his counsel, or required to serve a part rather than all of the remainder of the maximum term for which he was sentenced. The long, faithful and admirable devotion of his present counsel, appointed by the court, gives strong support

to the belief that counsel could have been materially helpful to the Board.

## IV.

While under *Scarpelli* it cannot be held with certainty that Baker would have been held by the Board to have been entitled to appointed counsel at the hearing, neither can it be held otherwise. Having borne the consequences of revocation which might have been avoided if represented by counsel it would seem only just that doubts should be resolved in his favor since the passage of time and intervening events preclude a reconstruction of the past with certainty. So resolving, the practical relief of setting aside the revocation, accompanied by its finding of parole violation, emerges. We find support for this position in Glenn v. Reed, 110 U.S.App.D.C. 85, 289 F.2d 462 (1961). We there held that the revocation of Glenn's parole had been illegally accomplished because he neither had nor had been offered counsel at the hearing which resulted in revocation. The court said:

> The error . . . cannot be corrected, because the illegal imprisonment that resulted from it [from the revocation of parole] cannot be undone. If counsel had been present at the . . . hearing as the law requires, there might have been no revocation of parole and no subsequent imprisonment.

> Though it cannot undo the wrong, we think we should order appellant released.

110 U.S.App.D.C. at 86, 289 F.2d at 463.[4] The remedy we adopt is action

4. The holding in *Glenn* on the right to counsel must be considered in connection with the subsequent *Hyser* decision, where it is pointed out:

> The decisions of this court which hold that the parolee must be advised of his right to have retained counsel present are based on judicial construction of the words 'opportunity to appear before the Board' in 18 U.S.C. § 4207. Glenn v. Reed, 110 U.S. App.D.C. 85, 289 F.2d 462 (1961). . . .

> They do not stand for the proposition that the presence of counsel is mandatory whenever a parolee appears before the Board or that parole revocation proceedings were to become adversary proceedings.

> .     .     .     .

> We hold due process does not require that indigent parolees be provided with appointed counsel when they appear before the Parole Board in revocation proceedings.

implicitly within the greater remedy of release ordered in *Glenn,* and is no less appropriate.

We also rely upon 28 U.S.C. § 2106 (1970),[5] in the unusual situation before us. While the general grant of authority in section 2106 is cautiously to be used, perhaps never when a clearly defined legal principle calls for a particular course of action, no such definitive principle points to a different solution of Baker's case than that we adopt. Moreover, this course avoids the constitutional question whether denial of the right to appointed counsel for Baker at the revocation hearing deprived him of the equal protection of the laws by reason of the provision of 24 D.C.Code § 206 (1967). Under that provision a prisoner who has been retaken upon a warrant issued by the Board of Parole shall be given an opportunity to appear before the Board, a member thereof or an executive designated by the Board. At the hearing he may be represented by counsel.[6] There is a serious question whether by reason of the conference of this right of representation an indigent can be denied a like right consistently with the equal protection of the laws and, consequently, with due process of law.

An appropriate order will be entered.

## ON PETITION FOR REHEARING

### PER CURIAM.

This matter is before the Court on appellant's petition for rehearing. Counsel for the parties have submitted memoranda. On consideration of the foregoing, it is

Ordered by the Court that the judgment of this Court entered February 16, 1972 be, and the same hereby is, vacated, and it is

Further ordered by the Court that the judgment of the District Court appealed from be, and the same hereby is, vacated and this case is remanded to the District Court so that consistently with the opinion of this Court filed herein this date the finding of violation by appellant of his parole, and the revocation of his parole, may be set aside and the records with respect thereto made so to indicate.

115 U.S.App.D.C. at 267, 318 F.2d at 238. That due process would require counsel in some parole revocation hearings, though not necessarily in all, was the view of some of the judges of our court in the en banc *Hyser* decision. Concurring and dissenting opinion of Fahy, J., concurred in by Wright, J., 115 U.S.App.D.C. at 289, 318 F.2d at 260. And see the dissenting views of Bazelon, C. J., and Edgerton, J. that an indigent is entitled to appointed counsel, else a serious problem of due process arises in light of our decisions permitting representation by retained counsel at a revocation hearing. 115 U.S.App.D.C. at 284, 318 F.2d at 255.

5. Section 2106 provides:
   The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

6. Since Baker's claim of right to have had counsel appointed for him has been kept alive we have authority to decide as we do in the interest of justice, not being held within the confines of the possible non-retroactivity of a new constitutional decision.