**Lee C. MARTIN, Petitioner-Appellant,**

v.

**Dennis M. LUTHER, Warden, and United States Parole Commission, Respondents-Appellees.**

**No. 81–1968.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1982.

Decided Sept. 8, 1982.

William H. Theis, Chicago, Ill., for petitioner-appellant.

Edward J. Moran, Asst. U. S. Atty., Dan K. Webb, U. S. Atty., Chicago, Ill., for respondents-appellees.

Before SWYGERT, Senior Circuit Judge, ESCHBACH, Circuit Judge, and DOYLE,* Senior District Judge.

ESCHBACH, Circuit Judge.

In this appeal from the district court's denial of a petition for a writ of habeas corpus we are presented with the question of whether the Parole Commission and Reorganization Act of 1976, Pub.L.No. 94–233, 90 Stat. 219 (codified at 18 U.S.C. §§ 4201–18), permits the United States Parole Commission to revoke the parole of a mandatory releasee after the expiration of his maximum term less 180 days if the Commission had issued a mandatory release violator warrant prior to the expiration of

* The Honorable James E. Doyle, Senior United States District Judge for the Western District of Wisconsin, sitting by designation.

that time period. We note jurisdiction under 28 U.S.C. § 2253, and for the reasons set forth below, we affirm the judgment of the district court, 515 F.Supp. 745, and hold that the Parole Commission has the statutory authority to render a parole revocation decision after the expiration of the mandatory releasee's maximum term less 180 days if the mandatory release violator warrant charging the violation was timely issued.

### I

In April 1976 petitioner-appellant was convicted of two federal narcotics distribution charges and was sentenced to concurrent six year terms of imprisonment and a consecutive five year special parole term. Because of accumulated good time credits petitioner earned while incarcerated, he was released from prison on October 12, 1979 as a mandatory releasee pursuant to 18 U.S.C. § 4163 and was deemed as· if released on parole until the expiration of his maximum terms less 180 days, *viz.* June 8, 1981,[1] pursuant to 18 U.S.C. § 4164. Upon receiving information that petitioner had been arrested on drug charges by Illinois police, respondent-appellee, the United States Parole Commission, issued a mandatory release violator warrant for petitioner on February 6, 1981 in accordance with 18 U.S.C. § 4213(a)(2). The warrant was executed (*i.e.* petitioner was arrested) on March 11, 1981 and petitioner was incarcerated in the Metropolitan Correctional Center in Chicago, Illinois. Pursuant to 18 U.S.C.

§ 4214(a)(1)(A), the Commission scheduled preliminary hearings on April 1 and April 3 in order to determine whether there was probable cause to believe that petitioner had violated a condition of his release. Petitioner, represented by counsel, requested and received a thirty-day postponement of the preliminary hearing, which was rescheduled for May 1.[2] Petitioner's counsel, however, did not appear at the May 1 hearing and petitioner declined to proceed without counsel being present. Hence, the hearing was once again postponed, apparently *sine die*.[3] Petitioner was later informed, however, that the preliminary hearing was rescheduled for June 8 and would be consolidated with the revocation hearing. Finally, the consolidated hearing was rescheduled for June 18, 1981.

On Friday, June 5, 1981,[4] Martin filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Northern District of Illinois, maintaining that he would be entitled to release from incarceration at 12:01 a. m. on Monday, June 8, 1981. Pointing to the provisions of 18 U.S.C. § 4164 and § 4210(b)(1), Martin argued that the Commission's jurisdiction over him would terminate on June 8, and since the Commission had scheduled his revocation hearing for June 18, he sought a writ ordering his release effective June 8.

The district court ordered respondents to appear before it on June 8 and show cause why the petition should not be granted.

---

1. The concurrent six year sentences were due to expire in April 1982. The date of termination of petitioner's parole was not in October 1981, which was 180 days prior to the expiration of his sentence, but occurred instead in June 1981. Presumably this discrepancy resulted from petitioner being credited with time served prior to sentencing.

2. Curiously, on April 20, 1981, Martin filed a petition for a writ of habeas corpus alleging he had been deprived of due process by not being afforded a prompt preliminary hearing. The district court denied the petition in an unpublished order, *Martin v. United States Parole Commission*, No. 81–C–2202 (N.D.Ill. May 19, 1981), and Martin has not appealed from the district court's judgment in that case.

3. No explanation is offered which indicates the reason for not immediately setting a new date for the hearing, though it seems reasonable to assume that parole authorities were awaiting a decision on Martin's first petition for a writ of habeas corpus before rescheduling the hearing. See note 2, *supra*. Indeed, the letter to petitioner informing him of the new date (June 6, 1981) for the hearing was dated May 22, 1981, a few days after the court denied Martin's initial habeas petition. In any event, petitioner does not assert any due process claim in this appeal regarding the Commission's actions in this regard.

4. The petition was filed June 5, 1981, but was dated June 3, 1981—hence the discrepancy between the text and 515 F.Supp. at 747.

Following the non-evidentiary show cause hearing, the district court denied the petition in an Order entered June 11, 1981. 515 F.Supp. 745. The Court rejected petitioner's argument that the Parole Commission's authority to adjudicate alleged parole violations terminates at the expiration of the mandatory releasee's maximum term less 180 days irrespective of when the mandatory release violator warrant is issued. Interpreting the relevant statutory language of 18 U.S.C. § 4210(b)(1)—which provides that the Commission's "jurisdiction" over a mandatory releasee shall terminate at the expiration of his maximum term less 180 days—the court held that

> Congress used the term "jurisdiction" in § 4210 in the sense that the parolee's conduct would be subject to Parole Commission supervision until the expiration of his sentence, not that the Parole Commission would be divested of "subject-matter jurisdiction" to adjudicate claimed parole violations occurring prior to the termination of the parolee's sentence because of fortuitous circumstances surrounding the retaking of a parolee:

515 F.Supp. at 748. The court viewed the date of the issuance of the violator warrant, rather than the date of parole revocation, as the legally operative one for purposes of the time limitation of § 4210(b)(1) and therefore denied the petition, since it was undisputed that the warrant had issued within the applicable time period.

Petitioner filed his notice of appeal on June 12, 1981. On June 16 the parole revocation hearing was held and petitioner was found in violation of the terms of his mandatory release. The net effect of this determination was that Martin was imprisoned until September 15, 1981 at which time he was released from confinement and commenced his consecutive special parole term.

## II

The first issue raised in this appeal is respondents' contention that the case is moot because petitioner has been released from the confinement which was challenged in his petition. Under the circumstances of this case, however, petitioner's release from confinement does not moot petitioner's appeal. Initially we observe that once habeas jurisdiction attaches in the district court, it is not defeated by the petitioner's release prior to completion of the habeas proceedings so long as the petitioner retains a personal stake in the outcome of the proceedings. Thus, where a conviction is challenged, the issue of the validity of the conviction remains justiciable even after the petitioner is discharged from imprisonment due to the collateral consequences of a criminal conviction. *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (overruling *Parker v. Ellis*, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960)). Since mootness is properly conceptualized as standing in a time frame, the question is whether petitioner retains a personal stake in the issue raised in his petition—whether the Parole Commission was lawfully empowered to revoke his mandatory release after June 8, 1981. Petitioner contends that his special parole term lawfully commenced on June 8, 1981, whereas the Commission maintains that it commenced on September 15, 1981. The Commission's position is of course tenable only if it had authority to revoke petitioner's release after June 8. It is undisputed that the commencement date of the consecutive special parole term is contingent on the date petitioner lawfully completed his maximum terms of imprisonment on the narcotics convictions. If petitioner's argument concerning the termination date of Parole Commission jurisdiction is meritorious, then his special parole term will end approximately three months earlier than is now scheduled.

One might argue, however, that viewed from this perspective, the petition is premature since petitioner is now lawfully in custody under the special parole term and that his challenge to the lawfulness of his prospective custody during the last three months of his special parole term is an issue not yet ripe for adjudication. *See generally Escobedo v. Estelle*, 655 F.2d 613, 615 n.5 (5th Cir. 1981) (*per curiam*) (discussing the conundrums of the characterizations of

mootness, ripeness, and the custody requirement in habeas proceedings). However, petitioner is not required to wait four years in order to challenge the lawfulness of his mandatory release revocation and hence the Commission's concomitant determination that his special parole term commenced on September 15, 1981. Just as a habeas petitioner may attack the validity of a consecutive sentence prior to commencing service of the consecutive sentence, *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968) (overruling *McNally v. Hill*, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934)), petitioner in the instant case may now assert his challenge to the commencement and expiration dates of his special parole term.

### III

■■■ As a mandatory releasee under 18 U.S.C. § 4163, petitioner was "deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days." *Id.* § 4164. The mandatory release violator warrant in this case was issued and executed well within this relevant time period, and petitioner of course does not contend otherwise. He argues, however, that the Commission was obligated to hold the parole revocation hearing and make its revocation decision before the expiration of his maximum terms less 180 days. In support of this contention, petitioner points to 18 U.S.C. § 4210(b), which provides in pertinent part:

> Except as otherwise provided in this section, the jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced, except that—
> (1) such jurisdiction shall terminate at an earlier date to the extent provided under section 4164 (relating to mandatory release) or section 4211 (relating to early termination of parole supervision)
> . . . .

There is no question that under this language, read in conjunction with 18 U.S.C. § 4164, a mandatory releasee who has ob-

served the conditions of his release is no longer deemed a parolee at the expiration of his maximum term less 180 days. At that point in time, he is no longer in custody and the Parole Commission's authority over him has terminated. It is equally clear to us that if the operative date passes and the Commission has not issued a violator warrant (or a summons) charging a violation of the release terms, the Commission's supervisory authority over the releasee is at an end, and no violator warrant could be issued even if the Commission later became cognizant of a violation which had occurred within the period the releasee was deemed on parole. *E.g.*, 28 C.F.R. § 2.44(c) (1981). *See also Birch v. Anderson*, 358 F.2d 520, 523 (D.C.Cir.1965). *But see Schiffman v. Wilkinson*, 216 F.2d 589, 591 (9th Cir. 1954), *cert. denied*, 348 U.S. 916, 75 S.Ct. 299, 99 L.Ed. 719 (1955). At some point, the Commission's scrutiny of a parolee's behavior must end, and in the case of a mandatory releasee, Congress has decided to set that date at 180 days prior to the expiration of the mandatory releasee's maximum term.

Petitioner urges a more expansive construction of the relevant statutory language. Seizing on Congress's use of the word "jurisdiction" in § 4210(b), petitioner first maintains that the Commission's power to hear and decide the issue of whether he had violated the terms of his release terminated on June 8, 1981. Second, petitioner attempts to derive support for his position from the fact that 18 U.S.C. § 4205 was repealed by the Parole Commission and Reorganization Act of 1976, Pub.L.No.94–233, 90 Stat. 219. Section 4205 provided:

> A warrant for the retaking of any United States prisoner who has violated his parole, may be issued only by the Board of Parole or a member thereof and within the maximum term or terms for which he was sentenced. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the prisoner was on parole shall not diminish the time he was sentenced to serve.

This provision had been cited by courts which upheld parole revocation decisions made after the expiration of a releasee's maximum term less 180 days so long as the violator warrant had issued before such date. *E.g., Moore v. Smith*, 412 F.2d 720 (7th Cir. 1969). Contending that the repeal of § 4205 evidences a congressional intent to divest the Commission of authority to make parole revocation decisions once the operative date is reached, petitioner argues that 28 C.F.R. § 2.44(d) (1981), which essentially codifies the prior law on this issue, lacks a statutory basis and is therefore without effect.

The Parole Commission, arguing that the term jurisdiction in § 4210(b) is ambiguous and that the repeal of § 4205 was intended only to change prior law regarding the issue of crediting a parolee, whose parole has been revoked, with time spent under supervision, submits that its interpretation of the relevant statutory language as expressed in its regulation is the more reasonable construction.

### IV

■■■ The central issue in this case, as the parties perceive it, is the meaning of the word jurisdiction in § 4210(b). "The power to hear and determine a cause is jurisdiction ..." declared the Supreme Court in the context of judicial authority. *U. S. v. Fernando de La Maza Arrendondo*, 31 U.S. (6 Pet.) 691, 709, 8 L.Ed. 547 (1832). Petitioner points to this definition of jurisdiction, and submits that Congress intended to convey such a meaning through its use of the term in § 4210(b). While it is true that where Congress uses a term with a settled, fixed legal meaning, ordinarily a court will infer that Congress intended to incorporate that established meaning of the term of art, *NLRB v. Amax Coal Co.*, 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981); *see Bradley v. United States*, 410 U.S. 605, 608–09, 93 S.Ct. 1151, 1154, 35 L.Ed.2d 528 (1973), petitioner recognizes, as he must, that jurisdiction is a "word that may have different meanings in different contexts." Br. at 10.

In the context of the parole statute, we find petitioner's interpretation unconvincing. Instead, we view the limitation on official authority imposed by § 4210(b) as analogous to a statute of limitations. Perhaps the paradigm of such a jurisdictional limitation is the time limit placed on appealing a decision of a lower court. When an appeal is not perfected within the governing time limit, the appeal is dismissed for want of jurisdiction. Such temporal jurisdictional limitations ordinarily require a party to commence a process within a given time frame which will invoke the adjudicatory power of a tribunal and ultimately lead to a decision on the merits of the controversy, and do not limit the time period in which a decision must be made.

In our view, § 4210(b) is one such temporal jurisdictional limitation. The language of that provision does not state that the jurisdiction of the Commission over an alleged parole violation terminates at the expiration of the parolee's maximum term; instead, it states that the Commission's jurisdiction "over the parolee" terminates at that time. We agree with the district court that this language means that the supervisory authority of the Commission over the parolee—the time period that the parolee's conduct is subject to government scrutiny—is limited by the term of his prison sentence. Section 4210(b) does not require the Parole Commission to render its decision on the merits of an alleged parole violation of a mandatory releasee prior to the expiration of his maximum term less 180 days, but rather, requires the Commission to commence the proceedings within that time frame by issuing either a violator warrant or summons. Our conclusion in this regard is based upon our analysis of the statutory scheme and its legislative history. It also is supported by common sense and an assessment of the practical consequences, which naturally guide our interpretation of legislative enactments. We think it unreasonable that Congress intended that the Parole Commission's authority to render a parole revocation decision should depend upon the fortuity of when it was able to locate the parolee and execute the warrant. Not only

would some parole violators be permitted to escape the consequences of their transgressions under such a scheme, but further, the Commission would be forced to make hasty decisions concerning alleged parole violations discovered late in the parolee's term.

A textual analysis of the statute reveals that Congress used the term jurisdiction as a shorthand description of the Commission's supervisory authority over the parolee. Thus, in § 4210(b)(1) itself, Congress provided that the "jurisdiction" of the Commission terminates at an earlier date than normal to the extent provided by "section 4211 (relating to early termination of parole supervision)." Under 18 U.S.C. § 4211(a), "the Commission may terminate supervision over a parolee prior to the termination of jurisdiction under section 4210." It thus appears that Congress equated jurisdiction with the Commission's *supervisory* authority over the parolee. The period of parole "supervision" by the Commission, that is, the time that the parolee's conduct was subject to Commission scrutiny, was viewed as coterminous with the "jurisdiction" of the Commission over the parolee: when Commission "supervision" ended, so did its "jurisdiction."

Moreover, the fact that the Congress directly addressed the subject of the timing of the decisional process, see 18 U.S.C. § 4214, counsels against adoption of petitioner's interpretation of the jurisdictional language of § 4210(b).[5] It is unlikely that Congress, after considering this issue and fashioning an explicit timetable, would have used the ambiguous jurisdictional language to convey an intention that the entire parole revocation process was to be completed by the expiration of the parolee's maximum term.

The meaning Congress ascribed to the term jurisdiction in the instant case becomes even more apparent upon an examination of the legislative history of § 4210(b). Even prior to the adoption of the language of that section, it was recognized that the "jurisdiction" of the government over the mandatory releasee expired at the end of his maximum term less 180 days under § 4164. Thus, the court in *Birch v. Anderson*, 358 F.2d 520, 524 (D.C. Cir.1965) stated that § 4164 "limits the *jurisdiction* of the [Parole] board over a mandatory releasee to the maximum term or terms for which he was sentenced 'less one hundred and eighty days.' Thus at the beginning of the 180-day period the board's *jurisdiction* of a releasee terminates ...." (emphasis added). In light of this prior judicial construction of the statute, we think it is manifest that no change from prior law was intended by Congress through its use of the term jurisdiction regarding the question petitioner raises.

Congress is presumed to know the law, *e.g., Cannon v. University of Chicago*, 441 U.S. 677, 696–98, 99 S.Ct. 1946, 1957–1958, 60 L.Ed.2d 560 (1979), and indeed petitioner relies upon this principle in arguing that Congress used the term jurisdiction to mean the power to hear and decide a case. Petitioner may have identified a relevant

5. In this respect, petitioner's analogy to probation violation warrants is self-defeating. The probation statute, petitioner argues, is a paradigm of a temporal jurisdictional limitation analogous to a statute of limitations. Petitioner contends that in contrast, the parole statute contemplates a different character of limitation upon official authority. We disagree. Under 18 U.S.C. § 3653, a probation violation warrant may issue "within the probation period" and the statute merely provides that the alleged violator be brought before the court "[a]s speedily as possible after arrest." Similarly, in the instant case, the parole violator warrant may issue within the mandatory releasee's maximum term less 180 days, and the statute merely provides that a preliminary hearing be held "without unnecessary delay." *Id.* § 4214(a)(1)(A). Of course, in each case the state's "jurisdiction" over the individual is limited—indeed, is defined—by the sentence imposed by the court. The sentencing judge loses "jurisdiction" over the probationer at the expiration of his probation term, and the Parole Commission's "jurisdiction" similarly expires at the end of the term for which the parolee was sentenced. To say that the government's jurisdiction over the probationer or parolee is coterminous with his sentence is tautological, and avails petitioner nothing. The critical question is what constitutes an exercise of jurisdiction. In both cases, the answer is the same: issuance of a violator warrant.

principle, but fails to recognize the specific body of law which is germane to the interpretative task at hand. The pertinent caselaw which assists us in interpreting the meaning of the word jurisdiction in the instant case is the prior judicial construction of the parole statute. Under the caselaw, even though it was recognized that the "jurisdiction" of the then Parole Board terminated at the expiration of the parolee's maximum term (less 180 days in the case of a mandatory releasee), it was nevertheless uniformly held that as long as a parole violator warrant was timely issued, subsequent proceedings could take place after the expiration of the parolee's maximum term. *Moore v. Smith*, 412 F.2d 720, 722 (7th Cir. 1969). (*I.e.*, the Board exercised its jurisdiction by issuing a timely violator warrant. *See Birch v. Anderson, supra*, 358 F.2d at 527.) *See also Baker v. Sard*, 486 F.2d 415, 416 (D.C.Cir.1973) (*per curiam*); *Carswell v. Parker*, 385 F.2d 645 (D.C.Cir. 1967). Section 4210(b) merely codifies the jurisdictional label the courts had used to describe the limitation on the then Parole Board's authority over the parolee. (Indeed, it is reasonable to infer that Congress may have borrowed the word jurisdiction from this caselaw.) Under prior caselaw, as under § 4210(b), the "jurisdiction" of the parole authorities over the parolee terminated at the expiration of the parolee's maximum term (less 180 days in the case of a mandatory releasee), and the denomination of the limitation on official authority as "jurisdictional" did not prevent the revocation of parole after the expiration of the parolee's maximum term—the "jurisdiction" of the Parole Board was equated with its supervisory authority over the parolee.[6]

■■■ We now turn to petitioner's argument that the repeal of a provision previously codified at 18 U.S.C. § 4205 evidences a congressional intent to divest the Commission of authority to conduct proceedings on a timely issued violator warrant after the expiration of a mandatory releasee's maximum term less 180 days.[7] We note at

6. We also note that we have previously considered the interplay between § 4210(b) and § 4211 and rejected an argument very similar to that raised by petitioner in the instant case. In *United States ex rel. Pullia v. Luther*, 635 F.2d 612 (7th Cir. 1980), the parolee argued that he was entitled to release after the lapse of five years based on § 4211(c)(1) and § 4210(b). The former provision provides that the Commission shall terminate supervision over the parolee at the end of five years unless it is determined in a hearing that the parolee is likely to engage in criminal acts. The latter provision provides that the "jurisdiction" of the Commission terminates as provided in § 4211. The parolee argued that upon expiration of the five year period, the "jurisdiction" of the Commission terminated by operation of law and it was too late to hold a hearing on the question of whether he would likely commit future crimes.

We rejected that argument, noting that the statutory scheme contemplated that the Commission's decision would be based on five continuous years of supervision which would be impossible if a hearing had to be held within five years. *Id.* at 616. Similarly, in the instant case, the statutory scheme contemplates that the mandatory releasee is subject to Commission supervision until the expiration of his maximum term less 180 days. To require that the parole revocation hearing be held and decision rendered within the same period of time would of course make parole revocation impos-

sible for parole violations occurring late in that period or for violations by parolees who cannot be expeditiously arrested.

7. Petitioner's verbal formulation of this contention is somewhat different. He maintains that prior caselaw relied upon § 4205 in holding that a timely issued violator warrant could be executed after the expiration of the parolee's maximum term. Thus, he reasons, the repeal of the predicate of those decisions is a rejection of the cases themselves. This characterization of the question, while it has a superficial appeal, is fundamentally flawed. The real question is whether Congress intended to retain the substance of § 4205, albeit in a different verbal form. If § 4205 had expressly stated that a warrant may be executed at any time, then the repeal of such language would support petitioner's position. However, § 4205 did not address this question; it merely imposed a limitation on the timing of the issuance of the warrant. The legislature's substitution of that language with the language of § 4210(b) in no way suggests that Congress was abandoning the caselaw concerning the timing of the execution of the warrant. Indeed, as our previous analysis indicates, it appears that the jurisdictional language of § 4210(b) had its genesis in that caselaw.

We also note that petitioner attempts to derive support for his position by arguing that Congress viewed the costs of returning a man-

the outset that there is no evidence in the legislative history demonstrating a congressional intent to change prior law respecting the legally operative effect of the issuance of a violator warrant. Moreover, we conclude that the mere repeal of § 4205 does not reflect such an intention.

Section 4205 provided that a violator warrant could be issued only within a parolee's maximum term, *i.e.*, a warrant could not be issued after the expiration of the parolee's maximum term. Petitioner argues that the repeal of this language means that a warrant may not be executed (and subsequent proceedings held) after the expiration of the parolee's maximum term. This conclusion is not only a non sequitur, but our analysis of the repeal of § 4205 reinforces our conclusion that the pertinent question is whether the jurisdictional language of § 4210(b) was intended only to recodify the substance of § 4205 concerning the timing of violator warrant issuance.[8]

■ The basic flaw in petitioner's argument is that § 4205 did not address the issue of when the violator warrant had to be executed or when the parole revocation decision had to be made; it merely stated when it had to be issued. Viewed in isolation, the repeal of language requiring issuance of a warrant within a certain time frame simply does not provide any insight into Congress's position on when the warrant must be executed.

Of course, the repeal of § 4205 cannot be read in some sort of interpretative vacuum;

instead, the repeal of that language must be considered in light of the corresponding superceding language of the revised statute. The real question is whether Congress intended to express the substance of § 4205, as interpreted by prior caselaw, in the language of § 4210(b). We have already answered that question, and thus our inquiry is at an end.

■ Finally, we observe that the Commission's regulation regarding this issue, 28 C.F.R. § 2.44(d) (1981), is entitled to some deference. *United States ex rel. Del Genio v. United States Bureau of Prisons, supra*, 644 F.2d at 588, *see also Ford Motor Credit Co. v. Ceñance*, 452 U.S. 155, 158 n.3, 101 S.Ct. 2239, 2241 n.3, 68 L.Ed.2d 744 (1981) (*per curiam*).

V

Accordingly, for the reasons stated in this opinion, the judgment of the district court is hereby affirmed.

---

datory release violator to custody to exceed the benefits during the final 180 days of his term. That argument, however, was equally applicable prior to the recent revision of the parole statute, and it was recognized that requiring the issuance of the violator warrant prior to the 180 day period fully effectuated congressional intent in this regard. *See, e.g., Birch v. Anderson*, 358 F.2d 520, 526 n.13 (D.C.Cir.1965).

**8.** Section 4205 had two features: first, it stated that a parole violator warrant could be issued only within the parolee's maximum term; and second, it provided that the unexpired term of imprisonment would run from the date the parolee was returned to custody and that the time served on parole would not diminish the time he was sentenced to serve. The repeal of

§ 4205, made in the process of a general revision of the parole statute, clearly was intended to change congressional policy with respect to the latter feature, with exceptions not relevant here. *See United States ex rel. Del Genio v. United States Bureau of Prisons*, 644 F.2d 585, 587 (7th Cir. 1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 870, 66 L.Ed.2d 808 (1981). In contrast, the jurisdictional language of § 4210(b) is consistent with the prior language of § 4205. In the process of a general revision of a statute, the legislature restructures a law, and the new structure often necessitates concomitant stylistic revisions. Thus the legislature may restate the prior law through a different form of expression, but no substantive change is intended.