Helen D. WOODSON, Appellee,

v.

ATTORNEY GENERAL,
et al., Appellants.

No. 91–5303.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 15, 1993.

Decided April 23, 1993.

---

David B. Orbuch, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty. at the time the brief was filed, John D. Bates, and R. Craig Lawrence, Asst. U.S. Attys., Washington, DC, were on the brief, for appellants.

Helen D. Woodson pro se.

Roger D. Williams (appointed by this court), with whom Edward J. Grenier, Jr., Washington, DC, was on the brief, for amicus curiae in favor of appellee's position.

Before: HARRY T. EDWARDS, SENTELLE and KAREN LeCRAFT HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The federal commutation statutes establish a scheme for the reduction of prisoners' jail terms based on accumulated "good time" credits. An eligible prisoner's sentence is reduced by ten days for each month of incarceration that the prisoner serves without bad behavior; the accumulation of these good time credits results in prisoners' gaining early release from prison and reductions of up to 180 days in the maximum terms of their sentences. 18 U.S.C. §§ 4161–4166 (repealed 1987).[1]

---

1. These statutes were repealed by Chapter II of the Comprehensive Crime Control Act of 1984 (otherwise known as the Sentencing Reform Act of 1984), Pub.L. No. 98–473, § 218(a)(4), 98 Stat. 2027 (1984). Repeal became effective on November 1, 1987, see Sentencing Reform Amendments Act of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985), but the statutes remain

In this case, the appellee, Helen Woodson, an inmate in the Federal Correctional Institution in Marianna, Florida, petitioned the Bureau of Prisons ("BOP") to "waive" her good time credits so that she could remain in prison for the full term of her twelve-year sentence. After the BOP denied her request, Woodson filed for declaratory relief in the District Court. The District Court held that Woodson had a right, secured by the Ninth Amendment to the United States Constitution, to waive any accumulated good time credits. *Woodson v. United States Dep't of Justice*, 770 F.Supp. 25, 26–27 (D.D.C.1991). The Government now appeals from this judgment, claiming that, under the federal commutation statutes, prisoners have no right to "waive" good time credits or to remain in prison beyond a term that has been reduced for good behavior. We agree. Accordingly, we reverse the judgment of the District Court.

## I. BACKGROUND

In 1985, Helen Woodson was sentenced to serve twelve years in prison after she was convicted on four counts of destruction of government property at the site of a Minuteman II ICBM silo.[2] Since her term in prison began, Woodson has forfeited some of her good time credits because of "institutional sanctions" imposed for various disobedient activities, including attempted and successful escapes, arson, destruction of government property, inciting to riot, and lock tampering. Complaint for Declaratory Judgment, Order, and Other Appropriate Relief at 2, *reprinted in* Brief for Appellee, *Woodson v. Attorney Gen., et al.*, No. 91–5303 (D.C.Cir.1993), Appendix. Woodson is concerned, however, that if she accumulates good time credits, she will be released from prison prior to the expiration of her maximum sentence. She claims that acceptance of good time credits and an early release from prison would violate her religious belief that "she should, so far as possible, separate herself from the secular system, neither accepting its benefits nor entering into agreements with it." Brief for Appellee at 39.

In 1990, Woodson formally requested permission from the BOP to waive her good time credits. The BOP denied her request, stating that the statutes gave it "no option other than [to] award a deduction." Request for Administrative Remedy, *reprinted in* Brief for Appellee, Appendix. Woodson next filed a *pro se* complaint in the District Court, seeking a declaratory judgment that she had no "duty" to accept her good time credits under 18 U.S.C. § 4161, and an order permitting her to waive any credits to which she was entitled. Complaint, *supra*, at 3. The BOP moved to dismiss the complaint for lack of personal jurisdiction, arguing that Woodson's complaint sounded in habeas corpus and that the District Court lacked jurisdiction over Woodson's custodian in Florida. The District Court denied the BOP's motion, holding that a habeas petition is appropriate only when an individual challenges the legality of her detention. *Woodson v. United States Dep't of Justice*, No. 91–47, mem. op. at 2 (D.D.C. Apr. 19, 1991). Subsequently, the BOP moved to dismiss Woodson's complaint on the grounds that, as a matter of law, Woodson had no right to waive her accrued good time credits. Construing Woodson's response as a cross-motion for summary judgment, the District Court denied the BOP's motion and granted Woodson's cross-motion, holding that Woodson had a right, protected by the Ninth Amendment, to waive her statutory good time credits. *Woodson v. United States Dep't of Jus-*

applicable to prisoners such as Woodson who were convicted of an offense prior to the date of repeal. *See* Pub.L. No. 98–473, § 235(b)(1)(B), 98 Stat. 2032.

**2.** Woodson was originally sentenced to serve eighteen years in prison. On November 1, 1985,

this sentence was modified by court order to twelve years in prison. Sentence Monitoring Computation Data as of 8–26–1991, *reprinted in* Brief for Appellee, *Woodson v. Attorney Gen., et al.*, No. 91–5303 (D.C.Cir.1993), Exhibit 1.

*tice,* 770 F.Supp. 25, 26–27 & n. 1 (D.D.C. 1991).

The District Court's holding rests on a premise that the Ninth Amendment to the United States Constitution protects the " 'right' to refuse privileges or rights." *Id.* at 27. The District Court first noted that the commutation statutes give a federal prisoner the "right, or entitlement" to use her accrued good time credits to achieve an early release from prison. *Id.* at 26. Next, the District Court reasoned that one cannot be "obligated to exercise a right or privilege," because "compelling one to accept a right or privilege nullifies free will and the power to choose—the raison d'etre of rights and privileges." *Id.* at 27. Finally, the District Court concluded that the " 'right' to refuse privileges or rights" is an unenumerated right implicitly protected by the Ninth Amendment to the Constitution. *See id.* Accordingly, the District Court held that Woodson had a constitutionally protected right to waive her good time credits. The District Court also rejected the BOP's arguments that a prisoner has no right to prolong her confinement at governmental expense, and that the BOP's ability to manage the prisons would be impaired if Woodson were allowed to waive her good time credits. *Id.* at 27–28.

The BOP has appealed the District Court's decision, which we now reverse.

## II. Discussion

### A. *The Government's Claim Regarding Habeas Corpus*

■ On appeal, the BOP renewed its argument that Woodson should have brought her claim as a petition for habeas corpus because her complaint implicates the duration and conditions of her confinement. This assertion is meritless. The defining purpose of a petition for habeas corpus is to "safeguard the individual against unlawful custody" by "test[ing] the lawfulness of the government's asserted right to *detain* an individual." *Chatman–Bey v. Thornburgh,* 864 F.2d 804, 806, 809 (D.C.Cir.

1988) (en banc). Woodson does not seek protection against unlawful custody; instead, she seeks to *prevent an early release* from custody. Thus, the purpose of her suit before the District Court is fundamentally opposed to the purpose of a petition for habeas corpus.

### B. *The Merits*

Turning to the merits of the case, we first examine the statutory basis for the purported "right" that Woodson claims. Section 4161 of the federal commutation statutes provides that an otherwise eligible prisoner "shall be entitled to a deduction from the term of his sentence" for ten days each month, if the prisoner has "faithfully observed all the rules and has not been subjected to punishment." 18 U.S.C. § 4161. A prisoner who has accumulated good time credits is also entitled to an early release from prison under section 4163, which provides that "a prisoner shall be released at the expiration of his term of sentence less the time deducted for good conduct." 18 U.S.C. § 4163. A prisoner on release for good time is subject to all the conditions of parole until 180 days before the expiration of her maximum sentence. At that time, the release becomes unconditional and the prisoner effectively receives a 180–day reduction in the maximum term of the sentence. 18 U.S.C. § 4164; *see Birch v. Anderson,* 358 F.2d 520, 523 (D.C.Cir.1965) (holding that prisoners released on good time credits cease to be subject to the jurisdiction of the parole board 180 days before the expiration of their maximum sentence). The commutation scheme also provides that prisoners forfeit "all or any part of" their earned good time credits if they "commit[ ] any offense or violate[ ] the rules of the institution." 18 U.S.C. § 4165.

Woodson focuses on the relationship between sections 4161 and 4163 to support her argument that she has a right to waive her good time credits. Woodson admits that, pursuant to section 4163, a prisoner has no choice but to be released if she has

accumulated good time credits. *See* 18 U.S.C. § 4163 (providing that a prisoner *"shall* be released at the expiration of his term of sentence less the time deducted for good conduct") (emphasis added). She asserts, however, that the phrasing of section 4161, which provides that a prisoner "shall be *entitled* to a deduction from the term of his sentence," permits the inference that a prisoner may waive her entitlement to good time credits. 18 U.S.C. § 4161 (emphasis added). Thus, according to Woodson, the statutory scheme gives the prisoner the discretion to accept or to waive the credits to which she is entitled, but gives her no control over her release if she chooses to allow her good time credits to accumulate.

We reject this reading of the statutes. Woodson's proposed interpretation presumes that the commutation scheme was intended to provide well-behaved prisoners with an option to stay in prison for the maximum length of their sentences. However, the plain language of section 4163 indicates otherwise. Furthermore, it does not make sense that Congress would have provided a prisoner with a choice whether to accept good time credits, but with no choice whether to waive her actual release based on those good time credits. If Congress had intended for prisoners to have the option to serve their maximum sentences in prison, then it would not have couched the prisoners' entitlement to early release in mandatory terms.

We also believe that Woodson's statutory construction is undermined by the terms of section 4165. This provision states that a prisoner may forfeit good time credits by the commission of any offense or the violation of prison rules. 18 U.S.C. § 4165. This is the *only* provision in the commutation scheme that addresses the forfeiture of good time credits, and it contains no hint that a prisoner may "elect" to give up credits (except by electing to commit an offense). Thus, section 4165 indicates that Congress did not intend prisoners to alienate their good time credits except through bad behavior.

██ We therefore reject Woodson's reading of section 4161, and hold that section 4161 *mandates* that prisoners accumulate good time credits for the months in which they have faithfully observed all rules and have not been subjected to punishment. Sections 4161 and 4163 thus create a scheme in which a prisoner *automatically accumulates* credits for good conduct, and is *mandatorily released* upon accumulation of a certain amount. This reading of section 4161 presents no conflicts with sections 4163 and 4165, and is consistent with the purpose of the commutation statutes, which we believe is to release manifestly well-behaved prisoners from the custody of the BOP before the expiration of their maximum sentences. *See Birch*, 358 F.2d at 523 (purpose of commutation statutes is to promote prison discipline by rewarding well-behaved prisoners with early release); *Short v. United States*, 344 F.2d 550, 553–54 (D.C.Cir.1965) (purpose of commutation statutes is to promote rehabilitation by rewarding the well-behaved prisoner with early release); *Hicks v. Reid*, 194 F.2d 327, 328 (D.C.Cir.) (purpose of commutation scheme is to use early release as an incentive for good behavior), *cert. denied*, 344 U.S. 840, 73 S.Ct. 51, 97 L.Ed. 653 (1952).

In rejecting Woodson's reading of section 4161, we also note that the courts, while not directly confronting this issue, have generally interpreted the provisions of the commutation statutes as being mandatory on both prisoners and wardens. *See, e.g., Hyser v. Reed*, 318 F.2d 225, 234 (D.C.Cir.) (en banc) (noting that good time release "is based on an arithmetical computation; there is no discretion in the [BOP] to deny release"), *cert. denied*, 375 U.S. 957, 84 S.Ct. 446, 447, 11 L.Ed.2d 315, 316 (1963); *Howard v. United States*, 274 F.2d 100, 102 (8th Cir.) (holding that "[o]bjections to [conditional] release made by the prisoner can in no way affect the duty of the warden to release the prisoner upon the terms imposed by [18 U.S.C. §§ 4163 and 4164]"), *cert. denied*, 363 U.S. 832, 80 S.Ct. 1604, 4 L.Ed.2d 1525 (1960); *Singleton v. Looney*, 218 F.2d 526, 528 (10th Cir.1955) (holding

that "[t]he conditions of the release are as mandatory as the right to the release itself based upon the statutory good-time deductions"); *Hicks*, 194 F.2d at 329 (holding that the commutation statutes "not only created the right to release but also imposed conditions thereon. Both are mandatory and neither can be avoided by dissent"). Furthermore, the BOP has consistently interpreted the commutation statutes as mandatory provisions. *See, e.g., Ward v. United States Bureau of Prisons*, No. 89–3023 (D.D.C. Nov. 15, 1989) (upholding the BOP's denial of a prisoner's request to waive his statutory good time credits).

■ Woodson contends that the policy underlying the statutory scheme is defeated by forcing prisoners to accept their good time credits. She asserts that, if she is not permitted to waive her good time credits, she will attempt to forfeit them by breaking prison rules or violating the conditions of release. Brief for Appellee at 33. We are neither impressed nor deterred by Woodson's threatened misconduct, for we do not believe that the statutory scheme is defeated simply because it creates "perverse incentives" for one federal inmate. *See Woodson*, 770 F.Supp. at 28 n. 3. We are satisfied in the knowledge that the commutation scheme promotes rehabilitation and provides the correct incentives for good behavior for the vast majority of federal prisoners to whom it applies.

In sum, we read section 4161 as a mandatory provision, which effectively requires a prisoner to be credited with good time credits, and which does not allow the prisoner to waive receipt of those credits. Because we find no statutory basis for Woodson's asserted "right" to waive good time credits, we need not pause for long over her claim that her "right" to waive her good time credits is secured by the Ninth Amendment to the United States Constitution.

The thrust of Woodson's argument to this court was that the commutation statutes gave her the right to waive her entitlement to good time credits, and that this right was protected by the Ninth Amendment. This is a strange argument, because if her "right" is protected by statute (which we already have determined it is not), then Woodson need not invoke the protection of the Ninth Amendment. Woodson made no claim that the Ninth Amendment supports a "right to waive" absent a statutory right; nor did Woodson press for affirmation of the District Court's holding that the Ninth Amendment protects an abstract, unenumerated " 'right' to refuse privileges or rights." *Woodson*, 770 F.Supp. at 27. Instead, Woodson conceded at oral argument that she does not have a Ninth Amendment claim if section 4161 does not give her the right to waive her good time credits. Furthermore, Woodson did not contend that Congress is without power to enact a good time credit statutory scheme that is mandatory in its terms. Thus, we find that the Ninth Amendment is irrelevant to this case, and that the question before us is simply one of statutory interpretation—whether section 4161 confers a right that can be waived. We have already answered this question in favor of the BOP.

■ Finally, we briefly address Woodson's claim that the equal protection component of the Fifth Amendment prohibits the BOP from treating prisoners eligible for release on good time credits differently from prisoners eligible for release on parole. *See* 18 U.S.C. §§ 4201–4218 (repealed 1987) (parole statutes).[3] Woodson notes that the BOP permits prisoners eligible for parole to waive parole, 28 C.F.R. § 2.11(b)–(c) (1992), and argues that prisoners eligible for release on good time credits should be accorded the same privilege. Even if we assume that the two groups of prisoners are similarly situated—*see Birch*, 358 F.2d at 524–26 (elaborating the differences be-

---

**3.** Like the commutation statutes, the parole statutes were repealed effective November 1, 1987, but remain applicable to Woodson. *See* Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985); Pub.L. No. 98–473, §§ 218(a)(5), 235(b)(1)(A), 98 Stat. 2027, 2032 (1984).

**1350**

tween release on parole and release on good time credits)—Woodson's equal protection claim fails because we find a rational basis for the BOP's disparate treatment of the two groups of prisoners. *See, e.g., McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961) (holding that "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it").

Prisoners become eligible for release on parole automatically (without regard to their good or bad behavior), after predetermined portions of their sentences have elapsed. 18 U.S.C. § 4205. Because eligibility is not triggered by good behavior, a prisoner is not released on parole unless the parole board determines, among other things, that she has substantially observed the rules of the institution and would not jeopardize the public safety if released. 18 U.S.C. § 4206. The parole board may consider information submitted by the prisoner when making its determination, 18 U.S.C. § 4207, and BOP regulations provide that a prisoner may waive consideration for release on parole. 28 C.F.R. § 2.11(b)–(c).

By contrast, prisoners become eligible for release on good time credits only upon showings of *demonstrated* good behavior. Thus, there is no need for either the prisoner or the parole board to evaluate the success of the prisoner's rehabilitation prior to release, because the good time credits serve as objective evidence of the prisoner's rehabilitation. In other words, the good time credits signify the prisoner's suitability for early release. Thus, it is entirely reasonable for the BOP to rely on good time credits, instead of a parole board determination or the prisoner's self-evaluation, in determining suitability for early release of prisoners who have accumulated good time credits. And, surely, it is rational for the Government to adopt a scheme to *release* prisoners who have a demonstrated record of good behavior, and who no longer appear to be a threat to society.

## III. CONCLUSION

The commutation statutes were designed to ensure that well-behaved prisoners are released from prison before they serve the maximum term of their sentences. Helen Woodson's claim that section 4161 provides her with the "right" to waive her good time credits is fundamentally at odds with the purpose of the commutation statutes; therefore, we reject her interpretation of section 4161. Section 4161 is a mandatory provision, which imposes good time credits on well-behaved prisoners and which does not allow prisoners to waive receipt of those credits. Because we hold that Woodson has no right, statutory or otherwise, to waive her good time credits or to remain in prison beyond her assigned term of incarceration, we find that the Ninth Amendment does not affect the disposition of this case. Accordingly, we reverse the District Court on this issue.

*So ordered.*